Mr. Jackson, I represent Francesk Shkambi. Assuming that the heroin Albania conduct in this case should not have been brought in this indictment, Mr. Shkambi's main concern is whether he should be held accountable sentencing-wise for the cocaine objective,  our position is that the evidence showed, and it certainly was the government's theory of the case, that Mr. Shkambi never entered into any kind of agreement that had to do with the distribution of cocaine in the United States. It was all outside. That being said, it's not an offense against 841A1 or 846. I cited the Morrison v. National Australia Bank case, relatively recent case, 2010 in my brief, which I think is kind of a watershed case in terms of how we determine whether or not a statute has an extraterritorial effect. The court was real clear, it seemed to me, it says, when the statute gives no clear indication of an extraterritorial application, it has none. And they've repeated that. The presumption is against extraterritorial application. Yes, Your Honor, that's correct. The – well, it's more – my understanding of the case law is it's a presumption that the statute has to rebut in its text, not in its legislative history, but in its text itself. So it's not a presumption. You think it's a bar. Well, I don't – yes, that's correct. That's a good correction. That's correct. The courts repeated that statement pretty strongly more recently in the Kyobel v. Royal Dutch Petroleum case. That's 133 Supreme Court, 1659. Nothing in 841A1, obviously 846 is a corollary, says anything about an extraterritorial application. Certainly there are Fifth Circuit cases and other cases that have given it a domestic application, but those cases all predate Morrison. I think – and I talked about this some in my initial brief. That further indicator that Congress did not intend for 841A1 to reach outside the United States is the fact that in 1970, during the same piece of legislation, massive piece of legislation, Congress enacted 21 U.S.C. 953, which had to do with exportation of controlled substances. They also enacted 21 U.S.C. 954, which is very specific. The title of the statute is Transshipment and In-Transit Shipment of Controlled Substances. It begins this way. Controlled substance – I'm going to skip through some of it – may be imported into the United States for transshipment to another country or be transferred or transshipped from one vessel to another. And then the phrase, if and only if, and it gives the conditions. So that statute is very pointed to deal with the kind of conduct that, under the government's theory of the case, Mr. Schombe was engaged in. Even if we were to look at legislative history, which my position is that we're not. I think Judge Elrod said it right. My position is it is a bar unless the statute, the text actually says it applies outside. The House report said that this entire piece of legislation was designed to deal with the comprehensive fashion – in a comprehensive fashion – with the growing menace of drug abuse in the United States. So, again, I don't think we can look at that, but it does say that. But that didn't have an effect on his sentence. I'm sorry? Did it affect his sentence, though? That's a great question. Yes, it did. The difference was – well, absent the cocaine, his – well, we've argued that the heroin doesn't go, doesn't count, because it all occurred in another country and it's a separate conspiracy. But the heroin doesn't affect his sentence. That's correct. Oh, it doesn't matter? Well, you're right. You're right. All right, I'll cut to the chase. What I've argued is that only the marijuana counts. And I don't think there's any doubt that there's evidence of the marijuana conspiracy. The difference is 41 to 51 months if you use the marijuana that's set forth in the pre-sentence report. And this is my calculation. It's not the pre-sentence report, so it's certainly subject to error. His sentencing range, as it was, was 292, I think, to 365, and he got a 324-month sentence. So the cocaine makes a significant difference. I really – I have some things to talk about here. I don't know if the court has questions or I can just dive in here. You can raise anything you wish, but, of course, you're not waiving anything that's in your brief. I'm sorry? You don't waive anything that's in your brief, but if you want to talk about something else, you're welcome to do that. It's your decision. Okay. Well, I appreciate that. One question that I didn't know would come up would be whether or not the argument could be made that, even though 841A1 doesn't reach the cocaine under our argument, could it come in under relevant conduct somehow? And our argument is that, no, it can't. For conduct to be relevant conduct, 1B1.3, it has to be criminal conduct. My authority for that is 174F3-515, 507F3-888, and 708F7-10. If it's not criminal, then it can't be relevant conduct. One argument that I suppose could be made is, because I've all but said it, and that is that this should have been charged as an export conspiracy, not a distribution conspiracy. Can we treat the conduct relied upon in the PSR for the cocaine as somehow violative of the export statute and still treat it as relevant conduct? My argument is no. Relevant conduct has to be other conduct. It can't be the same conduct. And my authority for that is 347F3-635 and 1B1.3, comment note one of the sentencing guidelines. Really, unless there are questions, I think that's probably all. All right. Will you save your full time for rebuttal, Mr. Kucera? Thank you. Mr. Jackson? May it please the Court, Mr. Kucera. The government suggests that the court is confronted with something more than the standard drug-dealing conspiracy here. In essence, what the evidence shows is that Mr. Shikambi was a free enterprise drug-dealing entrepreneur who had this grand vision of what he could do with a drug conspiracy and had an ever-expanding business plan. It began with his efforts to import high-quality hydroponic marijuana from the north, and specifically from Canada down to Texas, where it sold for a much better price than it would up north. And the evidence indicates that there was a lot of marijuana dealt with. From there, he came up with the idea, then what we're going to do is we're going to take cocaine, buy it down here in Texas where it's cheap, and transport it north up to Canada where we can make a killing on it and make even more money. And the evidence shows that he attempted to purchase cocaine from the confidential informant. In fact, he purchased eight kilograms from Mr. Garcia and, in fact, transported it through the United States up north to Canada. And from there, the evidence shows that Mr. Shikambi had designs on Europe, and he had conversations with three or four of the co-conspirators about here's what we're going to do. We're going to get cocaine here, and we're going to transport it to Europe where we can really sell it for a high markup, and ultimately our goal is we'll transport it directly from Mexico to Europe. But to begin with, we'll buy it here in the United States and transport it. And what do you know, within a couple of two or three months of those conversations, Mr. Shikambi shows up in Albania on what the government suggests could basically be called a scouting trip, where he is found dealing in locally available heroin, which he can get at a good price, and the government suggests evidence indicates he was going to take the profits from that heroin to then consummate his idea to bring cocaine to Europe. And unfortunately, before he could realize those dreams, he got caught with the four kilograms of heroin in Albania, which leads to the first issue, and that is the government respectfully suggests that the court properly admitted the evidence of the heroin transaction and the Albanian conviction for that heroin transaction and suggested really in this case doesn't matter whether the court analyzes that in terms of whether it was a proper object of the conspiracy, as the jury found, whether it was intrinsic to the conspiracy charged, as the court found, or whether it was admissible as Rule 404B evidence to show intent, as the court found. I'm sorry? We don't even have to decide any of that, do we? If it didn't make a difference in the sentence, you just put the heroin to one side. That's essentially—I mean, I assume the court has to make a decision that in this case, if there was error, it didn't matter, but I think that's as far as the court has to go because, as you noted, not only did it not make a difference with respect to his conviction or his sentence, it actually got him 36 months off of his sentence because the court gave him credit for the 36 months he spent in an Albanian prison. So in terms of the overall effect on Mr. Shikambi, he was better off with the heroin conviction than he would have been without it. Obviously, the court has to—I'll take that back. We're suggesting the court doesn't have to address the Morrison issue in this case, and should the court find that the Morrison or the Lopez-Vanegas issue needs to be addressed by this court at some point, this isn't the one to do it because the facts in this case show a broader overall conspiracy than was found in Lopez-Vanegas. And the evidence—I'm told not to use the word clearly. The evidence tends to show very strongly that the heroin was a part of this grander scheme, and we don't think the court can consider that in isolation. The second half, I guess, of the heroin issue is the admissibility of the Albanian conviction. The government would submit, as argued in our brief, that the Albanian conviction comes much closer to those convictions that this court allowed, for example, in Rodarte, where this court allowed a Mexican conviction on the issue of intent, and the German conviction, which incidentally had no jury trial that the Fourth Circuit allowed in Wilson, than it does to the one case that the defense cited, which was an uncounseled Indian tribal conviction, where the defendant confessed without having been advised of his Miranda rights. And frankly, again, even if the court perhaps in its discretion should not have admitted the conviction, it didn't matter in this case because the government argues first the evidence of the heroin transaction itself was admissible, and the conviction adds very little in terms of prejudice, if any, to the defendant on top of the evidence of the conviction. And once again, it had no effect on the guideline sentence and, in fact, got Mr. Chikambi 36 months credit here in the States. The only other thing I would note with respect to the Albanian conviction, the evidence in the case indicates that the system was implemented with assistance and advice from the United States and from Western Europe and that the series of protections that come with it all in all, frankly, rank very closely to what you would expect in a Western Europe or a United States conviction, with the exception in some cases, in particular the United States, of a jury trial. But as I think we may have noted, I know we noted this in the trial and may have noted in our brief, the Albanian conviction essentially works like a court-martial, which is a group of officers or officers and enlisted men that requires somewhere between a two-thirds and three-fourths majority, depending on what the offense is. If there are no questions with respect to the heroin conviction, I want to talk briefly about whether the cocaine was a proper objective of the conspiracy because, frankly, as a practical matter, the cocaine is what matters in terms of the sentencing determination. You can take off the ecstasy. You can take off the heroin. I believe you can even take off the marijuana, which Mr. Chikambi concedes he's guilty of, and you still reach a guideline range of between 10,000 and 30,000 kilograms, which is what the court found. So really, if the marijuana is conceded and the cocaine was an appropriate object of the conspiracy, the government suggests that's really all the court needs to be concerned with. And we suggest that this circuit's precedent and that of other circuits makes it clear that if the drug has a nexus to the United States, whether it's in territorial waters or, in one case, on the high seas and destined for the United States, or whether it's in the United States but may be destined elsewhere, that's enough, certainly, for the reach of 841 and hence 846 is a conspiracy. In fact, this court noted, I believe, in Baker that the drug laws were intended to have a broad sweep. And if we can't find that possession of large quantities of drugs within the United States without regard to where their ultimate destination may be, if that doesn't count, then, frankly, the sweep of the drug laws just became, I don't want to say minuscule, but certainly the goal of the drug laws has been essentially thwarted. If we have to worry about, or if the government has to prove that you've got 8 kilograms of cocaine in Texas, but somehow we have to prove that it was going to be sold in Chicago or Detroit and not in Canada. Frankly, that covers the main points that the government wanted to be sure and address. Unless the court has questions, I'm prepared to rely on my brief for the rest of it. All right. Thank you, Mr. Jackson. Mr. Caccero, you've saved time for a vote. I'll speak briefly to some points. Well, first of all, regarding whether the Albanian conduct was intrinsic or not, our position is that's a separate conspiracy. If it's a separate conspiracy, it can't possibly be intrinsic to the American activity. And the other thing I would just ask the court to note is that Rule 403 still applies even to conduct, even if it's deemed to be intrinsic. My authority for that is 591 F. 3rd, 780, 716 F. 2nd, 830. Mr. Jackson said that the Albanian conduct or conviction added very little in terms of prejudice. I disagree with that. One of our points of error was that if the court were to reverse on this basis, Mr. Scammi would get a new trial. Basically, in the Atkinson case was the closest one I could find. It's obviously not on all fours, but in the Atkinson case, basically, well, I'll just read the summary of it here. The government alleged conduct not a crime, spent hours eliciting testimony regarding that crime, only to concede in court at the end of trial that the law was to the contrary. As then, defendants were forced to defend themselves against charges which were not offenses under the prevailing law. Our position is that 841A1 was not violated. The government made a big deal about this Albanian conduct, and I've cited that in my brief in terms of the amount of the record, the number of witnesses, closing argument. So, we would disagree with the fact that the Albanian conduct evidence had very little effect or prejudice, potential for prejudice. Mr. Jackson suggested that we, that the drug statute needs to be, that 841A1, he didn't use that language, but I think that's what he meant, needs to be applied to this conduct apparently because the government doesn't have any other tools, and I've cited the other tools in the, at the beginning. They have the import statute, the export statute, and they have 21 U.S.C. 954. That argument is very similar to the Second Circuit's argument, I believe it was the Second Circuit's argument that the Morrison Court addressed. This is what the Second Circuit said, and this is, again, a different statute. The Second Circuit has thus established that application of Section 10B, which is the statute at issue, it's a securities statute, could be premised upon either some effect on American securities or significant conduct in the United States. And that sounds very similar to Mr. Jackson's nexus language. And the court said, no, that's not enough. We think the focus of the Exchange Act is not upon the place where the deception originated, but upon purchases and sales of securities in the United States. And it is our view only transactions and securities listed on domestic exchanges and domestic transactions in other securities, that's the only activity to which 10B applies. So, again, beating a dead horse here, maybe, but I think Morrison makes it clear, if the statute doesn't say it applies to something other than domestic activity, it doesn't. And, really, that's the only things I can think of to address. All right. Thank you, Mr. Fitzgerald. Your case is under submission. We noticed that your court appointed it, and we appreciate your willingness to take the appointment and your service to your client.